STATE v. DOWNING VERNON, ALIAS SCRAP VERNON, AND ROBERT WATKINS.

(Filed 26 June, 1935.)

**1. Criminal Law B b—**

Evidence in support of defendants' pleas of insanity or mental irresponsibility, superinduced by drunkenness at the time, *held* properly submitted to the jury, and found adversely to defendants' contentions.

**2. Homicide B a—**

Voluntary drunkenness and insanity, as negativing premeditation and deliberation, *held* properly submitted to the jury in this prosecution for murder in the first degree.

**3. Criminal Law I c—**

Motion for mistrial for that defendants' expert witness became enraged at the solicitor and "started as if to assault him as he left the witness chair," and was conducted from the courtroom by officers, *held* addressed to the sound discretion of the trial court.

**4. Criminal Law B c—Testimony of nonexpert that defendants were "of extremely low mentality" held competent in support of expert testimony.**

Where defendants introduce expert testimony in support of their pleas of mental irresponsibility, the exclusion of testimony of the sheriff that from his conversations with defendants he judged them to be "of extreme low mentality" is erroneous, the testimony being competent in support of the expert testimony on the question of mental capacity and felonious intent involved in the case, and its exclusion being prejudicial in view of the fact that defendants did not testify in their own behalf.

**5. Criminal Law L e—**

Where defendants are awarded a new trial for error in the exclusion of testimony, other exceptions relating to matters not likely to arise on another hearing need not be considered on appeal.

APPEAL by defendants from *Pless, J.,* at January Term, 1935, of ROCKINGHAM.

Criminal prosecution, tried upon indictment charging the defendants Robert Watkins and Downing Vernon, alias Scrap Vernon, with the murder of one C. B. Fulp.

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The defendants appeal, assigning errors.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Brown & Trotter and Floyd Osborne for defendants.*

STACY, C. J. It is disclosed by the confessions of the defendants that on 21 November, 1934, they assaulted and killed C. B. Fulp under circumstances which the jury found to be murder in the first degree. The *corpus delicti,* with all of its attendant atrociousness, is admitted. The deceased was a farmer living in Rockingham County. The defendants are Negro boys of the same neighborhood who had worked for Mr. Fulp from time to time. They knew the deceased had sold some tobacco the day before, and that he had been drinking. So, upon meeting him on the highway, they first engaged him in friendly conversation, danced for him, shared his liquor, then started on their way only to turn around in a short while and overtake him, to cut his throat, and to rob him. The defenses interposed by the prisoners amount to pleas of insanity, or mental irresponsibility, superinduced by intoxication or drunkenness at the time. *S. v. Keaton,* 206 N. C., 682, 175 S. E., 296; *S. v. Walker,* 193 N. C., 489, 137 S. E., 429. The evidence tending to support these pleas was properly submitted to the jury, and was rejected or found to

be unsatisfactory. *S. v. Campbell,* 184 N. C., 765, 114 S. E., 927; *S. v. Terry,* 173 N. C., 761, 92 S. E., 154.

Dr. William Wilson, of Cascade, Va. (witness for the defendants), testified that in his opinion the defendants were mentally deficient and incapable of distinguishing right from wrong. This was qualified on cross-examination: "I said they were mentally deficient, that is all I am willing to say about it. . . . I don't know whether they could distinguish right from wrong or not." This witness was called in to examine the defendants. He had never seen them prior to that day. The examination lasted about fifteen minutes. Dr. C. H. Wharton, who was also present at the examination, testified that in his opinion both defendants had sufficient mental capacity to know the difference between right and wrong. Dr. Wilson became enraged at the solicitor, while upon the stand, "started as if to assault him as he left the witness chair," and was conducted from the courtroom by officers. Whereupon, the defendants lodged a motion for a mistrial "because of Dr. Wilson's conduct." Overruled; exception. This was a matter resting in the sound discretion of the trial court. *S. v. Stafford,* 203 N. C., 601, 166 S. E., 734.

The sheriff was asked, on cross-examination, if he had not gathered the impression from observation and conversations had with the defendants that "they were very illiterate" and "of extremely low mentality." He would have answered both questions in the affirmative if permitted to do so. The first question may have been properly excluded (*S. v. Spivey,* 132 N. C., 989, 43 S. E., 475), but the second was competent (*S. v. Turner,* 143 N. C., 641, 57 S. E., 158) as tending to support the opinion of the doctor that the defendants were mentally irresponsible (*S. v. Keaton,* 205 N. C., 607, 172 S. E., 179), and as bearing upon the question of felonious intent. *S. v. Ross,* 193 N. C., 25, 136 S. E., 193. It is true this evidence, standing alone, would not be sufficient to make out the defenses interposed by the defendants, nevertheless, it was a competent link in the chain of evidence. *S. v. Allen,* 186 N. C., 302, 119 S. E., 504.

The defendants did not go upon the witness stand. This was their right. C. S., 1799; *S. v. Tucker,* 190 N. C., 708, 130 S. E., 720. The testimony of the sheriff, therefore, that they were "of extremely low mentality," was all the more important to the defendants, and its exclusion constitutes reversible error. *S. v. Ross, supra.*

The remaining exceptions worthy of consideration, especially those relating to the charge, are not likely to arise on another hearing, hence further consideration and rulings are pretermitted.

New trial.